____ FILED    ____ LODGED
____ RECEIVED    ____ COPY

APR 27 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M DEPUTY

Israel and Jessenia M. Garcia
6526 South 41st Lane
Phoenix, AZ  85041
Tel: (602)405-3503

*In Propria Persona*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF ARIZONA

| | |
|---|---|
| ISRAEL and JESSENIA M. GARCIA, ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> GMAC Mortgage, LLC fka GMAC Mortgage ) <br> Corporation;  Executive Trustee Services, ) <br> LLC; Residential Funding Company, LLC fka ) <br> Residential Funding Corporation; Quality ) <br> Loan Service Corporation; and  John Does ) <br> 1 through 1000, et al, ) <br> Defendants ) | Case No.: 2:09-cv-00295-GMS <br><br> FIRST AMENDED COMPLAINT <br><br> DEMAND FOR JURY TRIAL <br><br> (Assigned to the Honorable G. Murray Snow) |

**COMES NOW**, Israel Garcia and Jessenia M. Garcia, (hereinafter referred to as "Plaintiffs") in Propria Persona to file their first amended complaint against GMAC Mortgage, LLC fka GMAC Mortgage Corporation, (hereinafter referred to as "GMAC"), Executive Trustee Services, LLC (hereinafter referred to as "ETS") and John Does 1 through 1000, et al. (hereinafter collectively referred to as "Defendants") allege and state as follows:

**THE PARTIES**

1. Plaintiffs allege: are now, and at all times mentioned in this complaint, Israel Garcia and Jessenia M. Garcia the owners of certain described real property known as: 6526 South 41st Lane, Phoenix, AZ 85041, and more fully described as: LOT 12, Vineyard Commons, According to the Plat of the County Recorder in Book 617 of Maps, Page 27 Records of Maricopa County, Arizona, hereinafter referred to as "subject real property").

2. The Defendants in this cause of action are GMAC Mortgage, LLC fka GMAC Mortgage Corporation, Executive Trustee Services and John Does 1 through 1000, et al.

3. Plaintiffs further allege that in this case, to ensure that justice is given, and to correct the defects in the original complaint filed, Plaintiffs further remind the Honorable Court that they are unskilled at law and should not be held to the same standards as a practicing member of the State Bar. "Pro se litigants' pleadings are not held to the same high standards of perfection as lawyers. "*Haines V. Kerner*, 92 S. Ct. 594 (1982); *Jenkins V. McKeithen*, 395 US 411, 421 (1969); *Picking V. Penna. Rwy Co.*, 151 F. 2d 240; *Pucket V. Cox* 456 F. 2d 233 (6th Cir. 1972)."

## JURISDICTION AND VENUE

4. The United States District of Arizona has subject matter jurisdiction over the stated claims, and proper venue is within this Honorable United States District Court. Jurisdiction "arises under" 28 U.S.C. §1331, as to the Federal Questions presented and 28 U.S.C. § 1332 Diversity Jurisdiction.

5. Diversity, in that Plaintiffs are domiciled in the State of Arizona and the Defendants' places of incorporation are in States other than Arizona respectively, Title 12 U.S.C. Chapter 38; Title 12 U.S.C. Chapter 27 § 2605(b)(1)(2); Jurisdiction, Title 12 Regulation Z, Part 226.1(c) (3), Title 24 CFR, Regulation X, Part 3500 and Title 12 U.S.C. § 2614, the Real Estate Procedures Settlement Act (hereinafter "RESPA") and Title 28 U.S.C. § 1367, relative to any Arizona State claims. The United States District of Arizona has subject matter jurisdiction over the stated claims, and proper venue is within this Honorable United States District Court.

## NATURE OF THE ACTION

6. This case arises out of the Defendants egregious, and far reaching fraudulent misrepresentation of material facts, false claims and statements purporting to claim an interest in, or a lien or encumbrance against, Plaintiffs subject real property. Defendants caused a document asserting such claim to be recorded in the office of the Maricopa County Recorder, knowing or having reason to know

that the document was groundless, contained a material misstatement or false claim and was otherwise invalid.   Defendants are liable to the Plaintiffs, owners of the subject real property, for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and cost of this action. In addition to seeking compensatory, consequential and other damages, Plaintiffs seek declaratory relief as to what (if any) party, entity or individual or group thereof is real party in interest, holder in due course and/or the owner and in possession of the promissory note.   Plaintiffs also seek whether the Deed of Trust (Mortgage) secures any obligation of the Plaintiffs, and a mandatory injunction requiring reconveyance of the subject real property to the Plaintiffs and/or, in the alternative a final judgment granting Plaintiffs Quiet Title in the subject real property.   Plaintiffs will show required *prima facie* evidence for all the essential facts in this case.

### FACTUAL BACKGROUND

7. Plaintiffs will show through direct evidence by way of recorded documents from the Maricopa County Recorder's office proof which expressly or straightfowardly proves the existence of a fact.

8. A Deed of Trust between Homecomings Financial Network, Inc. (hereinafter referred to as "Homecomings") and Plaintiffs, instrument #20060324944, recorded March 02, 2006. See Exhibit A.

9. Defendant GMAC, an international financial services corporation, owns Homecomings.

10. On or about April 24, 2006, a purported assignment of the Note (hereinafter referred to as the "instrument") from Homecomings to Defendant GMAC- Servicing rights and/or sale of the instrument.   Article 3 of the Uniform Commercial Code. An instrument is a reified right to payment. The instrument itself represents the right. The right to payment is transferred by delivery of

possession of the instrument "by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Plaintiffs received a payment statement and letter effective April 12, 2006, See Exhibit B, indicating that Defendant GMAC would be whom Plaintiffs were to make payments to. Plaintiffs then proceeded to make payments to Defendant GMAC. Plaintiffs can find no recorded assignment from Homecomings to Defendant GMAC. Dates of no recordation are from on or about April 24, 2006 to December 26, 2008. Plaintiffs made payments to Defendant GMAC without a recorded assignment or proper transfer naming Defendant GMAC owner and/or authorized assignee or servicing agent.

11. Substitution of Trustee, from Defendant GMAC to Defendant ETS, document #20080886085, recorded October 14, 2008. See Exhibit C. This substitution of trustee was premature, as Defendant GMAC as not owner, or holder in due course, or in possession of instrument and had no proof of any recorded assignment from Homecomings. As there was no recorded assignment from Homecomings to Defendant GMAC, their rights to enforce the security instrument, is null and void and is without authority.

12. Notice of Trustee's Sale by Defendant ETS. Date of trustee sale scheduled for January 15, 2009, document #20080886086, recorded October 14, 2008. See Exhibit D.

13. Assignment of Deed of Trust, from Homecomings to Defendant GMAC document #20081088685, loan #0601553778, purportedly signed October 08, 2008 and notarized on December 24, 2006, and recorded December 26, 2008 two years and eight months after the fact. See Exhibit E. A.R.S. §33-404 E. Homecomings recorded and assigned all interest by way of an assignment of Deed of Trust to Defendant GMAC. See Exhibit E. Therefore, Homecomings assigned all their interest to Defendant GMAC in order that Defendant GMAC have standing or right

to foreclose and/or the right to enforce the instrument" and to assign
Defendant ETS the Substitution of Trustee rights. See Exhibit C.

14. A.R.S.   §33-404 E. <u>Disclosure of beneficiary; recording; failure to disclose</u>
(1) There is no legal recordation and/or any record showing that Homecomings
assigned, sold or transferred to Defendant GMAC a legally, recorded assignment
as the servicer/assignee and/or had servicing rights and/or was sold or bought
and had any rights regarding the subject real property, see Exhibit C.   (2)
There is no recordation in the Maricopa County Recorder's office of Homecomings
assigning back to Defendant GMAC the assignment, instrument #20081088685,
Exhibit D. There is no assignment of the subject instrument in the county
records (*Any conveyance of real property or an interest in real property which
does not include the disclosures required by this section with respect to the
property so conveyed is voidable by the other party to the conveyance. Any
action to void the conveyance shall be commenced within two years after the
date of recordation of the document affecting the conveyance.*)   Therefore,
Defendant GMAC cannot assign, transfer, substitute a trustee or make reference
to any such matter regarding that they are, have or ever had standing or were
in fact holders in due course, or real party in interest in the attempt to
enforce the instrument on Plaintiffs subject real property.  Defendant GMAC has
no legal rights in this matter and has no standing to continue with a
fraudulent, misrepresented representation.  Any grant of a certificate of title
to an entity other than Plaintiffs or the nominal mortgage creates an incurable
defect in title.   There is no recording of any documents in the county records
which predates the Defendants attempt to initiate a foreclosure and/or eviction
which would authorize them to proceed. *In re Foreclosure Cases,* 521 F.Supp.2d
650, 653 (S.D.Ohio 2007) ("To show standing ... the plaintiff (in this case
Defendant GMAC) must show that it is the holder of the note and the mortgage at
the time the complaint and/or the petition for foreclosure was filed.")  This

raises the question of who, if anyone, is presently entitled to enforce the note in these circumstances.    It is apparent that Defendants do not.  No transfer of the instrument occurs under <u>Section 3203</u>(a) until it is delivered to the transferee.

**FIRST CAUSE OF ACTION**

**FRAUDULENT MISREPRESENTATION**

15. The facts made above in paragraphs 1 - 14 are hereby re-alleged and reaffirmed as though fully set forth and incorporated by reference herein.

16. Defendants have knowingly and fraudulently filed a Wrongful Foreclosure Complaint and/or Petition upon the Plaintiffs. (1) Defendants made a representation of a present or past fact, which Defendants knew and continue to know to be false.   Defendants also materially misrepresented material information to the Plaintiffs with full knowledge that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made, see Exhibits B through E;   (2) Defendants representation was false, misleading, negligent, fraudulent by way of deceptive tactics.   Defendants (a) obtaining title; (b) to subject real property of Plaintiffs; (c) by an intentional false statement of past or existing fact; (d) with intent to defraud Plaintiffs.  This constitutes a false and/or misrepresented assignment to be wrongfully recorded with the Maricopa County Recorder by Defendant ETS by fraud or misrepresentation of a material past or present fact, see Exhibits A through E.  These false and/or misrepresented material facts have been recorded with the Maricopa County recorder's office to mislead deceive the Court and the Plaintiffs.  This is a major factor, and if Defendants are allowed to continue, will bring about great and irreparable harm to the Plaintiffs in losing their home to the Defendants by a fraudulent and wrongful foreclosure.  The Defendants know that the recordings, see Exhibit A through E are misrepresentations of the material facts in question was and is

false and therefore knew and know of the falsity.  The Defendants intentions to defraud are continuing.  Since title must pass between parties, and Defendants are deceiving the Court and the Plaintiffs to pass property for a specific purpose, this is larceny by trick in that larceny by trick simply uses a deception to deprive the owner of possession, not title.  The Defendants are attempting a wrongful foreclosure to obtain possession by fraud and/or misrepresentation of subject real property from Plaintiffs; " (3) Defendants representation is significant to the issue or matter at hand; (4)   Defendants knew and still know that the representation was and is  false and that it is and was misleading;  (5) Defendants knew that if not challenged, representation would be relied on by Plaintiffs and the Court as being true; (6)   Defendants continue that their intent should be relied upon as true; (7) Defendants continue to represent that the Plaintiffs and the Court should rely on the representation; (8) that the Court and the Plaintiffs should rely on the representation as being true; and (9) Defendants fraudulent, negligent and false representation has caused Plaintiffs irreparable damages, harm and injury. As a result of Defendants acts, who are without authority, See Exhibits A through E, Plaintiffs have sustained great and irreparable injury in that Defendants are continuing to attempt a wrongful foreclosure on Plaintiffs subject real property, which is unique and is not replaceable, and Plaintiffs will lose the use and enjoyment of their property. Baldwin v. Roberts, 212 Ga. App. 546, 547, (2) (442 SE2d 272) (1994);   "A piece of property is always considered unique, and its loss is always an irreparable injury." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982); *see Pelfresne v. Village of Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989). Ultimately, there can be no adequate remedy at law for loss of a home. "Property" Blacks' Law Dictionary (5th ed. 1979) states that "in the strict legal sense, [property is] an aggregate of rights which are guaranteed and

protected by the government" and that the term property "includes not only ownership and possession but also the right of use and enjoyment for lawful purposes." The Defendants have been both fraudulent and/or reckless in representation of facts as true when they are not, and their intentions to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.   Defendants actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs, constitutes an "enterprise," with the aim and objective of the enterprise being to perpetuate a fraud upon the Plaintiffs through the use of intentional nondisclosure, premeditated by deliberate purpose, previous consideration, and some degree of planning, material misrepresentation, and creation of fraudulent and/or misleading documents, see Exhibits A through E.

17. Defendants also materially misrepresented material information to the Plaintiffs with full knowledge by Defendant's that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

18. As a direct, proximate, and foreseeable result of Defendants actions, Plaintiffs are subject to loss of property and loss of use of property, suffering legal and financial recognizable injury and other damages as a result of Defendants reckless and willful actions.

19. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

### SECOND CAUSE OF ACTION

#### NEGLIGENCE

20. The facts made above in paragraphs 1 - 19 are hereby re-alleged and reaffirmed as though fully set forth and incorporated by reference herein.

21. Defendants acted with negligence.   Defendants' conduct is culpable because it falls short of what a reasonable person would have done to another individual.

Defendants' actions were made with intentional neglect as they did nothing to protect the Plaintiffs' from foreseeable risks of harm.   (1) Defendants owed the Plaintiffs a duty of care which Defendants breached by the inaccuracy of their representations in filing for a foreclosure against Plaintiffs. Defendants duty to perform with due diligence making sure that the assignments, the chain of title, the real party of interest could without any doubt be proven and that they knew for an absolute fact that they held the blue wet ink original of the promissory note, (hereinafter referred to as the "note") and/or were in fact holders in due course, or real party of interest, see Exhibits A thru E;   (2)   Defendants were negligent because they knew and/or should have known that they were without authority in making a representation that was not correct and factual and they knew and/or should have known the gravity of the resulting injury if they foreclosed on the Plaintiffs without correct representation and/or authority, see Exhibits A through E; (3) Defendants did not take the burden of adequate precautions to follow the rules and regulations of the Fair Debt Collection Practices Act, (hereinafter referred to as "FDCPA"); and (4) Defendants by their conduct and by doing so caused damage to the Plaintiffs.

22. The actions of the Defendants were committed intentionally, willfully, knowingly, and with negligent and reckless disregard for the rights of the Plaintiffs.

23. As a direct, proximate, and foreseeable result of Defendants' actions relative to their duty of care, in breaching that care, Plaintiffs are subject to loss of property and loss of use of property, suffering legal and financial recognizable injury and other damages as a result of Defendants' reckless and willful actions.

24. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

**THIRD CAUSE OF ACTION**

**CIVIL CONSPIRACY**

25. The facts made above in paragraphs 1 - 24 are hereby re-alleged and reaffirmed as though fully set forth and incorporated by reference herein.

26. Defendants conspired between themselves an agreement to deprive the Plaintiffs of their legal rights and/or to deceive the Court and Plaintiffs in order to obtain an illegal objective.   The voluntary agreement and overt acts by Defendants in furtherance of the plan are the main elements necessary to prove Defendants' conspiracy. The Defendants are attempting to use legal means to accomplish illegal results, and/or illegal means used to accomplish something legal.   The Defendants when planning their actions were aware of the many probable and possible consequences.   All of the consequences taken into consideration could be prevented through the simple expedient either of ceasing the given activity or of taking action to correct the possible harm to Plaintiffs rather than refraining from action.   The Defendants intensions to continue with the current plan means that all the foreseen consequences are intentional.

27. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

28. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

29. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL RECKLESS ACTS**

30. The facts made above in paragraphs 1 - 29 are hereby re-alleged and reaffirmed as though fully set forth and incorporated by reference herein.

31. The Defendants hold a reckless disregard for the likelihood of causing emotional distress to the Plaintiffs. Defendants have yet to inform the Court

and the Plaintiffs of the true facts of assignments, transfers, real party in interest and/or who really is the holder in due course and who has the right to enforce the instrument.   Defendants are liable for Intentional infliction of emotional distress (hereinafter referred to as "IIED") as they have continued to claim without authority their right to foreclose on Plaintiffs' subject real property therefore harming and injuring the Plaintiffs and committing fraud upon the Court.

32. Defendants conduct has been Extreme and outrageous.   The conduct of Defendants is beyond the standards of civilized decency and utterly intolerable in a civilized society.   This is a tort of Outrage due to the outrageous conduct that would cause a reasonable person to exclaim "Outrageous".   The Defendants have used and are continuing to use extreme and outrageous pattern of conduct, as (1) this is not an isolated incident; (2) the Plaintiffs are vulnerable and the Defendants know this; (3) the Defendants are in a position of power; and (4) the Defendants have the a duty of care to follow the laws that apply specifically to these issues and owe the Court and the Plaintiffs a responsibility to follow and obey the laws set forth.   A breach of the standard of care has occurred, and a duty of care has been proven.

33. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF FAIR CREDIT REPORTING ACT**

34. The facts made above in paragraphs 1 – 33 are hereby re-alleged as though fully set out and incorporated by reference herein.

35. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and Trans Union, under the Federal Fair Credit Reporting Act.

36. Defendants wrongfully, improperly, and illegally reported negative information regarding the Plaintiffs to one or more Credit Reporting Agencies, resulting in

Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

37. Pursuant to 15 U.S.C. sec. 1681 (s)(2)(b), Plaintiffs are entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiffs, including emotional distress and humiliation.

38. Plaintiffs are entitled to recover damages from Defendants for negligent non-compliance with the Fair Credit Reporting Act pursuant to 15 U.S.C. sec. 1681(o).

39. Plaintiffs are also are entitled to an award of punitive damages against Defendants for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 U.S.C. sec, 1681(n)(a)(2) in an amount to be proven at time of trial.

**FIFTH CAUSE OF ACTION**

**NOTICE IN VIOLATION OF TITLE 12 USC §2601 ET. SEQ.**

**15 USC §1601, ET. SEQ. AND TITLE 12 CFR §226.18**

40. The facts made above in paragraphs 1 - 39 are hereby re-alleged as though fully set out and incorporated by reference herein.

41. Defendants have failed to give proper notice of Notice of Default and Right to Cure and Acceleration of the loan transaction as required by 12 U.S.C. §2601 et seq. and 15 USC §1601 et seq.  Plaintiffs are specifically in the class of persons this statute was designed to protect.

42. As a direct and proximate cause of Defendants failure to provide proper notice, Plaintiffs are subject to loss of property and loss of use of property and other damages as a result of Defendants failure.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF TITLE 15 U.S.C. § 1692 (e)**

43. The facts made above in paragraphs 1 - 42 are hereby re-alleged as though fully set out and incorporated by reference herein.

    a.    15 U.S.C. § 1692 (e) states that a "false, deceptive, and misleading representation, in connection with the collection of any debt", includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice. Such notice omits information, which should have been disclosed, such as but not limited to vital citations, disclosing the agency's jurisdictional and statutory authority. Said notice further contains, false deceptive and misleading representations, and allegations intended to intentionally pervert the truth for the purpose of inducing one, in reliance upon such, to part with property belonging to them and to surrender certain substantive legal and statutory rights. To act upon this Notice would divest one from his/her property and their prerogative rights, resulting in legal injury.

44. As a direct and proximate cause of Defendants failure to provide true and proper representation in connection with the collection of any debt, Plaintiffs are subject to loss of property and loss and damages as a result of Defendants failure.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

45. The facts made above in paragraphs 1 - 44 are hereby re-alleged as though fully set out and incorporated by reference herein.

46. Defendant ETS falls into the category of § 14.1 Fair Debt Collection Generally. Foreclosing liens and mortgages, conducting trustee's sales, and forfeiting agreements for sale, are all in one way or another, part of the process of debt collection. Debt collection is the subject of increasing regulation and control. Attorneys handling foreclosure related matters are increasingly

-13-

affected by various debt collection restrictions.

47. Defendant ETS is in violation of § 14.1 Fair Debt Collection Practices Act. The purpose of the FDCPA was to regulate the activities of persons in the business of collecting consumer debts.  Defendant ETS has violated 15 U.S.C. § 1692 in that Defendant ETS did not prevent deceptive, misleading, false, evasive, or oppressive communications and conduct in performing the duties of substitute trustee for Defendant GMAC.   Defendant ETS was the substitute trustee appointed by Defendant GMAC to commence a foreclosure sale on Plaintiffs.  Defendant ETS did not follow the regulations of the FDCPA.   With respect to preemption, the FDCPA does not annul, alter, or affect, or exempt any person from complying with, any state laws covering debt collection practices, except to the extent such state laws are inconsistent with any provision of the FDCPA, and then only to the extent of the inconsistency. 15 U.S.C. § 1692n.   The FDCPA specifically provides that a state law is not inconsistent and preempted if it affords greater consumer protection than the FDCPA.

48. As a direct and proximate cause of Defendants' failure to provide true and proper representation in connection with the collection of any debt, Plaintiffs are subject to loss of property and loss and damages as a result of Defendant ETS's failure.

**RELIEF SOUGHT**

**WHEREFORE,** having set forth numerous legally sufficient causes of actions against Defendant GMAC and Defendant ETS, Plaintiffs pray that the Honorable Court issue Orders of Final Judgment against all Defendants jointly and severally as follows:

   A. Order Rescissions of the entire Mortgage and Promissory Notes amounting to clear  title to property with fixtures as a result of the aforementioned;

   B. Order that Defendants are liable to Plaintiffs in an amount not less than $200.00 and up to $2,000.00 for each violation after proven;

C.  Damages as a result of the aforementioned violations, to be fixed and awarded by the Court in treble;

D.  Damages for the Unfair and Deceptive Acts and Practices in the amount of $4000.00 for each violation after proven;

E.  Cost of litigation as provided in Title 15 USC § 1601 et. seq., and

F.  Revocation of any and all power of attorneys, duties or other alleged powers to act on behalf of Plaintiffs; and

G.  Any other relief the Court deems just and proper under the circumstances;

H.  Award of 100% ownership to Plaintiffs of subject real property;

I.  DEMAND FOR JURY TRIAL - Plaintiffs demands trial by jury of all matters so triable as a matter of right.

RESPECTFULLY SUBMITTED THIS **27**th DAY, **APRIL, 2009.**


By: _____
Israel Garcia, Plaintiff In Persona Propria
Without Prejudice/Without Recourse UCC1-308


By: _____
Jessenia M. Garcia, Plaintiff In Persona Propria
Without Prejudice/Without Recourse UCC1-308

1

## Certificate of Service

2

3  I, Israel Garcia and I, Jessenia M. Garcia hereby swear under the penalty of perjury

4  that the foregoing document was filed with the Clerk of the District Court on this **27th**

5  day of April, 2009.  I, Israel Garcia and I, Jessenia M. Garcia further swear that a

6  copy of the foregoing document was mailed to the parties listed below.

7  **COPY** of the foregoing filed
On this **27th** day of April, 2009 with:

8

Clerk of Court
Clerk, United States District Court
9  Sandra Day O'Conner U.S. Courthouse, Suite 130
401 West Washington St., SPC-1
10  Phoenix, AZ 85003-2118

11  **COPY** of the foregoing delivered to
Honorable G. Murray Snow
12  On this **27th** day of April, 2009 at:

13
United States District Court
Sandra Day O'Conner U.S. Courthouse, Suite 130
14  401 West Washington St., SPC-1
Phoenix, AZ 85003-2118
15

16  **COPY** of the foregoing mailed via regular U.S. mail
This **27th** day of April, 2009 to the following who
17  are receiving courtesy copies:

18
Douglas A. Toleno
Pite Duncan, LLP
19  4375 Jutland Drive, Suite 200
P.O. Box 17935
20  San Diego, California 92177
*Attorneys for GMAC Mortgage, LLC, Executive Trustee*
21  *Services, and Residential Funding Company*

22
Paul M. Levine
McCarthy Holthus Levine
23  363 North Central Avenue, Suite 1050
Phoenix, Arizona  85012
24  *Attorneys for Quality Loan Service Corporation*

25

26

27

28

**VERIFICATION**

STATE OF **ARIZONA**            )

                               )ss

COUNTY OF **MARICOPA**          )


     Israel Garcia and Jessenia Garcia being first duly sworn, upon their oath, depose and state as follows:  That they are the Plaintiffs in the above-entitled and numbered matter; that they have read the foregoing Motion for Leave to file an Amended Complaint in the above captioned Case and know the contents thereof, that the matters stated therein are true of their own knowledge except as those matters stated upon information and belief, and as to those matters thy believe them to be true.


_____
Israel Garcia, *Plaintiff in Propria Persona*
Without Prejudice/Without Recourse UCC1-308


_____
Jessenia M. Garcia, *Plaintiff in Propria Persona*
Without Prejudice/Without Recourse UCC1-308


SUBSCRIBED, SWORN TO, AFFIRMED AND ACKNOWLEDGED before me, the undersigned Notary Public, on the 27ᵗʰ day of **APRIL**, 2009, by **Israel Garcia and Jessenia M. Garcia** known to me or who have satisfactorily demonstrated to me that they are the above-named Plaintiffs in this matter.


_____
Signature of Notary Public


9/13/2010
_____
Notary Expiration Date

NOTARY SEAL OR STAMP

**LIZETTE FRANCO**
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
September 13, 2010

# EXHIBIT "A"

OFFICIAL RECORDS OF
Unofficial
Document

CHICAGO TITLE INSURANCE COMPANY

Recording Requested By:
HOMECOMINGS FINANCIAL NETWORK, INC.

*recorded 03/09/2006*
*Instrument #2006032494+*

And After Recording Return To:
HOMECOMINGS FINANCIAL NETWORK, INC.
ONE MERIDIAN CROSSING, SUITE 100
MINNEAPOLIS, MINNESOTA 55423
Loan Number: 042-744384-1

*3/4*

*2514268.17*

# NEW HOME

―――――――― [Space Above This Line For Recording Data] ――――――――

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 2, 2006                    , together with all Riders to this document.

(B) "Borrower" is ISRAEL GARCIA AND JESSENIA M. GARCIA, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 6526 SOUTH 41ST LANE, PHOENIX, ARIZONA 85041

(C) "Lender" is HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a A DELAWARE CORPORATION                                            organized and existing under the laws of DELAWARE
Lender's mailing address is 4350 VON KARMAN AVE., SUITE 100, NEWPORT BEACH, CALIFORNIA 92660
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is CHICAGO TITLE INSURANCE AGENCY
Trustee's mailing address is 1201 S. ALMA SCHOOL RD. #6550, MESA, ARIZONA 85210

(E) "Note" means the promissory note signed by Borrower and dated MARCH 2, 2006
The Note states that Borrower owes Lender   THREE HUNDRED EIGHTY-NINE THOUSAND FIVE HUNDRED TWENTY-FOUR AND 00/100          Dollars (U.S. $389,524.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)                              Page 1 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

A3003.dot

(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items" means those items that are described in Section 3.

(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | MARICOPA | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

```
LOT 12, VINEYARD COMMONS, ACCORDING TO THE PLAT OF THE COUNTY
RECORDER IN BOOK 617 OF MAPS, PAGE 27 RECORDS OF MARICOPA
COUNTY, ARIZONA.
A.P.N.: 105-90-292 1
```

which currently has the address of   6526  SOUTH  41ST  LANE

[Street]

PHOENIX                           , Arizona            85041                    ("Property Address"):

[City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)                        Page 3 of 13                    DocMagic ℮Forms 800-649-1362
www.docmagic.com

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only

so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)                                     Page 5 of 13                                     DocMagic @Forms 800-649-1362
www.docmagic.com

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)                     Page 6 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable

Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)                    Page 8 of 13                    DocMagic €Ferrus 800-849-1362
                                                                              www.docmagic.com

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Az3003.dot

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ISRAEL GARCIA                -Borrower

_____ (Seal)
JESSENIA M.  GARCIA          -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

Witness:                     Witness:

_____    _____

Unofficial Document

——————————— [Space Below This Line For Acknowledgment] ———————————

State of Arizona
County of MARICOPA

    The foregoing instrument was acknowledged before me this
by ISRAEL GARCIA, JESSENIA M. GARCIA

_Clora Mrtinez_
Signature of Person Taking Acknowledgment

_assistant escrow officer_
Title

_____
Serial Number, if any

CLARA MARTINEZ
Notary Public — Arizona
Maricopa County
Expires 05/15/07

(Seal)

My commission expires: __5·15·07__

Unofficial Document

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3003 1/01 (rev. 6/02)
Page 13 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Az3003.dot

# EXHIBIT "B"

GMAC Mortgage Corporation
PO Box 780
Waterloo IA 50704-0780



April 24, 2006

00/25/05  08.29    0002350 20060425 FD304101 GMTRN   1 OZ DOM FD30410000* 140316   W1

|||..|.|.|.||.||..||..|.|..||.|.||.||..|.|.|.||..|.|.|||...|||

ISRAEL GARCIA
JESSENIA M GARCIA
6526 SOUTH 41ST LANE
PHOENIX AZ 85041-4946

RE:  Account Number    0601553778
     Property Address   6526 SOUTH 41ST LANE
                        PHOENIX AZ 85041

Dear Israel Garcia and Jessenia M Garcia:

Welcome to GMAC Mortgage Corporation.  You were recently notified by Residential Funding Corporation your account was transferred to our office effective 04/12/06.  Your new GMAC Mortgage Corporation Account Number is listed above.

We are pleased to serve you and hope you find our services a perfect match for your needs.

Beginning 04/12/06, payments should be sent to GMAC Mortgage Corporation as Residential Funding Corporation will be unable to accept payments and apply them to your account on or after that date.   We realize you may have inquiries regarding the transfer of your account and have included information covering the most common questions on the reverse side of this letter.  For questions regarding the past servicing of your account, please contact Residential Funding Corporation's Customer Service at 952-857-7000.

GMAC Mortgage Corporation is committed to providing superior service to our customers!  Please detach the contact information below and keep it for future reference.  For your convenience, use the attached coupon for making your first payment to GMAC Mortgage Corporation.

Sincerely,

*[signature]*

Charles R. Hoecker
Vice President, Customer Care
Loan Servicing

Enclosure(s)

### My GMAC Mortgage Corporation Account Number is 0601553778



**Phone:**  800-766-4622
Personal assistance is available 6:00 a.m. - 10:00 p.m. CT M-F, 9:00 a.m. - 1:00 p.m. Sat
Automated Phone Services are available 24 hours a day, 7 days a week!

**Email:**  customer.service@gmacm.com
**Website:**  www.gmacmortgage.com

**Correspondence:**  PO Box 4622, Waterloo IA 50704-0422

**CUSTOMER INFORMATION**

| | |
|---|---|
| Name: | **ISRAEL GARCIA** |
| | **JESSENIA M GARCIA** |
| Account Number: | **0601553778** |
| Home Phone #: | **(602)243-1009** |

**PROPERTY ADDRESS**

**6526 SOUTH 41ST LANE**
**PHOENIX       AZ 85041**

# GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

862601 01/19/06 10:00 0026323 20060608 FF084107 GMREG       1 OZ DOM FF08410000+ 146316       GM

#BWNHJPY
#KW07249E70997#

||l.l.|.l.ll.....l.l.ll.l.ll.ll..l.l.ll.....l.ll.l......lll

ISRAEL GARCIA
JESSENIA M GARCIA
6526 SOUTH 41ST LANE
PHOENIX AZ 85041-4946



> For information about your existing account,
> please call: (800) 766-4622.
>
> For information about refinancing or obtaining
> a new loan, please call:
>    Nationwide, 24 hours    (800) 753-4622
>    Or to find a branch near you (800) 888-4622

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | 0601553778 |
| Current Statement Date | June 05, 2006 |
| Maturity Date | April 01, 2036 |
| Interest Rate | 6.37500 |
| Current Principal Balance* | $389,524.00 |
| Current Escrow Balance | $678.65 |
| Interest Paid Year-to-Date | $2,069.35 |
| Taxes Paid Year-to-Date | $0.00 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:     1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

## Details of Amount

| | |
|---|---|
| Principal and Interest | $2,069.35 |
| Subsidy/Buydown | $0.00 |
| Escrow | $135.73 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $2,205.08 |
| Account Due Date | July 01, 2006 |

## Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 06/01/06 | 06/05/06 | $2,205.08 | | $2,069.35 | $135.73 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).

See back for automatic payment sign-up information and other payment options.

## Important News

Do you know what's on your Credit Report and who put it there? See the enclosed offer for our optional PrivacyGuard.

Pay down debt! Fund a home improvement project or tuition! Call the number above to apply for a Home Equity Line or Loan.

## See Reverse Side For Important Information

**EXHIBIT "C"**



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2008-0886086 10/14/08 04:09 PM
8 OF 16

When Recorded Return to:
**Executive Trustee Services, LLC**
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

(818) 260-1600

0601553778 AZ-166168-C   080016936-AZ-GSI

# NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 3/2/2006 and recorded on 3/9/2006 as Instrument # 20060324944, Book Page    in the office of the County Recorder of **Maricopa** County, Arizona, at public auction to the highest bidder at At the steps at the front entrance of the Superior Court Building, 201 West Jefferson, Phoenix, Arizona, on **1/15/2009** at **12:00 PM** of said day:

**LOT 12, VINEYARD COMMONS, ACCORDING TO THE PLAT OF THE COUNTY RECORDER IN BOOK 617 OF MAPS, PAGE 27 RECORDS OF MARICOPA COUNTY, ARIZONA.**

ACCORDING TO THE DEED OF TRUST OR UPON INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. SECTION 33-808(C):

STREET ADDRESS OR IDENTIFIABLE LOCATION:     **6526 SOUTH 41ST LANE**
**PHOENIX, Arizona 85041**

TAX PARCEL NUMBER: **105-90-292**

ORIGINAL PRINCIPAL BALANCE:  **$389,524.00**

NAME AND ADDRESS OF ORIGINAL TRUSTOR:
(as shown on the Deed of Trust)

**ISRAEL GARCIA and JESSENIA M. GARCIA, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**
**6526 SOUTH 41ST LANE**
**PHOENIX, AZ 85041**

NAME AND ADDRESS OF BENEFICIARY:
(as of recording of Notice of Sale)

**GMAC MORTGAGE, LLC  FKA**
**GMAC MORTGAGE CORPORATION**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON,  PA 19034**

(Page 2 of 2)

AZ-166168-C   0601553778      080016936-AZ-GSI

NAME, ADDRESS & TELEPHONE NUMBER OF TRUSTEE:
(as of recording of Notice of Sale)

**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**Sale Line:  714-730-2727**

DATED: **10/13/2008**

                              **EXECUTIVE TRUSTEE SERVICES, LLC**

                    By: _____
                         **Dee C. Ortega, TRUSTEE SALE OFFICER**

"Executive Trustee Services, LLC is a licensed escrow agent and therefore qualified
to act as a Trustee pursuant ARS Section 33-803(A)(1). Trustee's Regulator:
Arizona State Banking Department."

State of California) ss.
County of Los Angeles }

On **10/13/2008** before me, **Myron Ravelo** Notary Public, personally appeared **Dee C. Ortega,** who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          **Myron Ravelo**

MYRON RAVELO
Commission # 1763787
Notary Public - California
Los Angeles County
My Comm. Expires Aug 26, 2011

**EXHIBIT "D"**

**RECORDING REQUESTED BY:**

**AND WHEN RECORDED MAIL TO :**
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

**Unofficial
Document**

*recorded 10/14/2008
Instrument #20080896085*

TS No.: **AZ-166168-C**
Loan No.: **0601553778**

## SUBSTITUTION OF TRUSTEE

**WHEREAS, ISRAEL GARCIA and JESSENIA M. GARCIA, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP was** the original Trustor, **CHICAGO TITLE INSURANCE AGENCY** was the original Trustee, and **HOMECOMINGS FINANCIAL NETWORK, INC.** was the original Beneficiary under that certain Deed of Trust dated **3/2/2006** and recorded on **3/9/2006** as Instrument **20060324944**, in Book , Page , of Official Records of **Maricopa** County, Arizona; and described as follows:

**LOT 12, VINEYARD COMMONS, ACCORDING TO THE PLAT OF THE COUNTY RECORDER IN BOOK 617 OF MAPS, PAGE 27 RECORDS OF MARICOPA COUNTY, ARIZONA.**

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust Provided,

**NOW THEREFORE,** the undersigned hereby substitutes **EXECUTIVE TRUSTEE SERVICES, LLC,** as Trustee under said Deed of Trust. The successor trustee appointed herein qualifies as trustee of the Trust Deed in the trustee's capacity as a licensed escrow agent as required by ARS Section 33-803, Subsection (A) (1).

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
**DATED: 10/13/2008**

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

**Marvell L. Carmouche, LIMITED SIGNING OFFICER**

State of California} ss.
County of Los Angeles }

On **10/13/2008** before me, **Dee C. Ortega** Notary Public, personally appeared **Marvell L. Carmouche** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

**EXHIBIT "E"**

OFFICIAL RECORDS OF

# Unofficial
# Document

Requested and Prepared by:
**Executive Trustee Services, LLC**

*recorded 12/26/2008*
*instrument # 2008 1088685*

When Recorded Mail To:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

Loan No.: 0601553778
TS NO: AZ-166168-C

## ASSIGNMENT OF DEED OF TRUST

**For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:**

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

**all beneficial interest under that certain Deed of Trust dated:  3/2/2006 executed by ISRAEL GARCIA and JESSENIA M. GARCIA, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as Trustor(s), to CHICAGO TITLE INSURANCE AGENCY, as Trustee, and recorded as Instrument No. 20060324944, on 3/9/2006, in Book , Page  of Official Records, in the office of the County Recorder of Maricopa County, Arizona together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.**

**DATE: 10-8-2008**

HOMECOMINGS FINANCIAL, LLC, FKA
HOMECOMINGS FINANCIAL NETWORK, INC.
BY:  RESIDENTIAL FUNDING COMPANY, LLC,
ATTORNEY IN FACT

**Rosalie Solano, Assistant Secretary**

**State of California        } SS.**
**County of Los Angeles              }**

On **12/24/2008** before me, **Dee C. Ortega** Notary Public, personally appeared **Rosalie Solano** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

Signature _____ (Seal)
**Dee C. Ortega**

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010